# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| In re: <br><br> LZLABS GMBH, <br><br> Debtor in a Foreign Proceeding. | § § § § § § § | Chapter 15 Case <br><br> Case No. 25-60769 (MMP) |

**DECLARATION OF CHRISTOPHER JARKE IN SUPPORT OF**
**(A) VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN PROCEEDING,**
**(II) RECOGNITION OF THE FOREIGN REPRESENTATIVE, AND (III) RELATED**
**RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE, AND**
**(B) EMERGENCY MOTION OF THE DEBTOR, AS FOREIGN REPRESENTATIVE,**
**FOR PROVISIONAL RELIEF PURSUANT TO BANKRUPTCY CODE SECTION 1519**

I, Christopher Jarke, do hereby declare as follows:

1. I am over the age of 18, and I am authorized to submit this declaration (the "Declaration") on behalf of LzLabs GmbH ("LzLabs" or "Debtor").

2. I am the Chief Financial Officer and Chief Operating Officer of the Debtor and am authorized to provide this Declaration on behalf of the Debtor. I completed a master's degree in banking, finance, and German tax law from the University of Cologne in Germany in 1999. My office is located at: Richtiarkade 16, 8304 Wallisellen, Switzerland.

3. The Debtor is an applicant in a foreign insolvency and restructuring proceeding, with consent of Transliq AG ("Transliq" or "Administrator"), in its capacity as provisional administrator, pursuant to the *Order of 15 August 2025* (the "Moratorium Order")[1] entered by the District Court of Bülach in the Canton of Zürich, Switzerland, Court File No. EC250012-C/Z1 (the "Swiss Court" and the "Swiss Proceedings"), which approved the corresponding application and

---

[1] A true and correct copy of the Moratorium Order has been filed contemporaneously with the Official Form 401 Petition and is incorporated herein for all purposes.

granted a provisional moratorium for an initial period of four months. The provisional moratorium is pending under Switzerland's *Debt Enforcement and Bankruptcy Act* ("SDEBA").[2]

4. I am familiar with the business and affairs of the Debtor, and all facts set forth in this Declaration are based upon my personal knowledge; my review of relevant documents; information provided to me by employees of the Debtor working under my direction or supervision; my discussions with current or former representatives and/or agents of the Debtor; and/or my opinions based upon my experience concerning the Debtor's operations and financial condition. If called upon to testify, I could and would testify competently as stated herein.

5. I submit this Declaration in support of the *Verified Petition for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"),[3] and the *Emergency Motion of the Debtor, as Foreign Representative, for Provisional Relief Pursuant to Bankruptcy Code Section 1519* (the "Motion"), filed contemporaneously herewith.

6. I have reviewed the Verified Petition and the Motion, and believe the factual assertions therein are true and correct, and to the best of my knowledge the relief requested therein is appropriate and necessary. I further declare as follows:

## I. BACKGROUND

**A. The Debtor's Business and Corporate Structure**

7. Since 2011, the Debtor's core business is to build and refine technology that revolutionizes how its customers do business and assists companies and organizations in moving their critical applications onto their platform of innovation to unlock the full potential of digital transformation. The Debtor's goal is to develop products which gradually and easily integrate

---

[2] Available in German at https://www.fedlex.admin.ch/eli/cc/11/529_488_529/de.
[3] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Verified Petition.

outdated mainframe applications into modern environments. Through the Debtor's relentless pursuit to develop and engineer computer software which can be interoperable with legacy environments, the Debtor eventually launched a product called the Software Defined Mainframe ("SDM") in March of 2016. More specifically, SDM allows customers to migrate their applications and data that were written and compiled on an IBM mainframe to Linux computers, without the need to recompile the applications or change to new source code. SDM and its potential value is the primary asset of the Debtor.

8. The Debtor's management and executives are located in Wallisellen, in the Canton of Zürich, Switzerland, which includes all the Debtor's cash management and accounting functions. The Debtor has intellectual property assets supporting its business registered with the U.S. Patent and Trademark Office as well as in other countries globally. The Debtor does not have any non-IP assets (other than retainers for legal counsel) or customers in the United States and does not employ any employees residing in the United States. The Debtor currently remains operational and in control of its business (subject to certain requirements under the Swiss Proceeding).

**B. Pending U.S. Civil Action**

9. To the best of my knowledge, the only pending or threatened litigation against the Debtor in the United States is *International Business Machines Corp. v. LzLabs GmbH and Texas Wormhole, LLC*, Case No. 6:22-cv-00299-DAE currently pending in the United States District Court for the Western District of Texas, Waco Division (the "U.S. Litigation").

**C. The Swiss Proceedings**

10. On August 15, 2025, the Moratorium Order was entered by the Swiss Court granting certain relief to the Debtor who remains in control of its assets and financial affairs pursuant to a provisional moratorium. Further, the Moratorium Order appointed the Administrator

3

to oversee the Debtor's affairs and consent to expenses and actions outside of the ordinary course of business (such as facilitating the retention of professionals for the filing of this chapter 15 case). The Administrator reports to the Swiss Court, and the Swiss Court's approval is further required for certain specific transactions. The Moratorium Order and the pertaining provisions of the SDEBA provide similar rights, powers, and duties to the Debtor as those afforded to a debtor-in-possession under the Bankruptcy Code, including control over the Debtor's assets and affairs, a stay of all actions against the Debtor and its assets (subject to certain exceptions specifically referred to in the SDEBA), and authority to seek recognition with respect to the Moratorium Order in foreign jurisdictions, including the United States.

11. As discussed above, on August 15, 2025, the Swiss Court entered the Moratorium Order, which instituted a provisional moratorium for an initial period of four months. Upon the Debtor's request, the provisional moratorium may be extended by up to a maximum aggregate duration of eight months. As an alternative to an extension or following the expiration of the maximum duration of the provisional moratorium, the provisional moratorium may be converted into a definitive moratorium of up to twenty-four months. Collectively, the provisional and definitive moratorium are often referred to as a compositional moratorium. Through the composition moratorium, the Debtor can explore and pursue restructuring alternatives and composition agreements with creditors. *See* Fischer Declaration, at ¶¶ 6-10.

12. Critically, during the moratorium, creditors are generally stayed from individual enforcement actions pursuant to Article 297 of the SDEBA (subject to certain exceptions specifically referred to in the SDEBA), and the Debtor shall continue to manage and operate its day-to-day business activities, including the collection of all outstanding receivables and

4

preservation of estate assets for the benefit of creditors pending disposition of the Swiss Proceedings. *See* Fischer Declaration, at ¶ 11.

**D.     The Chapter 15 Case and Support for Recognition**

13.     As foreign representative, pursuant to the Moratorium Order, the Debtor has caused to be filed an Official Form 401 chapter 15 petition for the Debtor, the Verified Petition, the Motion, and certain other related filings.  The Debtor, as foreign representative, seeks recognition of the Swiss Proceedings and, specifically, the Moratorium Order, as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding as defined in chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code").

14.     Pursuant to the Moratorium Order and the pertaining provisions of the SDEBA, the Debtor is its own foreign representative and is authorized to act as the Debtor's representative for the purpose of having the Swiss Proceedings recognized in a jurisdiction outside of Switzerland, including the United States.

15.     The Debtor is a Swiss limited liability company who, pursuant to the Moratorium Order, remains in control of its assets and affairs.  Switzerland is the Debtor's nerve center because the Debtor's management resides there and all corporate functions are located in Switzerland.

**E.     Support for the Motion and Provisional Relief**

16.     Pending recognition of the Swiss Proceedings, the Debtor requests provisional relief pursuant to section 1519 of the Bankruptcy Code to, among other things, enjoin any collection efforts against the assets of the Debtor which would frustrate the Swiss Proceedings and any other value-maximizing efforts of the Debtor.  To the best of my knowledge, I understand that relief granted pursuant to section 1519 requires satisfaction of the standards for injunctive relief, which, as shown below, are satisfied.

**(1)** *A substantial likelihood of success on the merits*

17. For the reasons set forth above, in the Verified Petition and in the Motion, the Debtor submits that it is likely to prevail in obtaining recognition of the Swiss Proceedings. The Swiss Proceedings are a valid proceeding pending pursuant to the SDEBA that should be recognized pursuant to chapter 15 of the Bankruptcy Code. As I understand the concept, the center of main interests ("COMI") of the Debtor is located in Switzerland for the reasons discussed above.

18. Accordingly, there is a substantial likelihood that the Swiss Proceedings and, specifically, the Moratorium Order will be recognized pursuant to chapter 15 of the Bankruptcy Code; and, respectfully, should be recognized as a foreign main proceeding based on my general understanding of chapter 15.

19. If the Court does not find that the Swiss Proceedings are a foreign main proceeding, the Debtor, as foreign representative, submits that the facts underlying this chapter 15 proceeding support a finding that the Debtor has an establishment in Switzerland within the meaning of section 1502(2) of the Bankruptcy Code, and thus there is a substantial likelihood that the Court will recognize the Swiss Proceedings as a foreign non-main proceeding. In the event the Swiss Proceedings are recognized as a foreign main proceeding, the Debtor, as foreign representative, also submits that there is a substantial likelihood that the Court will determine that the relief requested is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtor or the interests of the Debtor's creditors pursuant to sections 1519 and 1521 of the Bankruptcy Code.

**(2)** *A substantial threat of irreparable injury if the provisional relief is not granted*

20. Pursuant to the Moratorium Order, the Debtor continues to operate. Without provisional relief, the Debtor will be frustrated from fully performing its duties, and the value of the Debtor's assets could be jeopardized.

6

21. As I understand it, to permit the Debtor to fulfill its obligations to fully and fairly administer its assets and affairs, the Moratorium Order and SDEBA provide for substantially similar powers and protections pursuant to Swiss law as those afforded to a debtor-in-possession under the Bankruptcy Code. Among other things, the stay of all collection activities akin to Bankruptcy Code section 362 provides the Debtor with the proverbial breathing space to maximize value for all rightful creditors.

22. Without recognition and enforcement of the Moratorium Order to the fullest extent permitted by chapter 15 of the Bankruptcy Code, the Debtor will be unable to fully discharge its duties to all creditors, specifically including direct negative impact to the Debtor's ability to maximize value and cause the Debtor to expend finite resources to defend the U.S. Litigation and potential actions that are intended to be stayed by the Moratorium Order.

**(3)** *<u>That the threatened injury to the movant outweighs any damage the provisional relief might cause to the opponent</u>*

23. I believe that any threatened injury to the Debtor outweighs any damage the injunction might cause to opponents thereof. The requested relief, if granted, would benefit the Debtor's creditors, as a whole, by facilitating the Debtor's efforts to maximize value through available restructuring options under the Swiss Proceedings.

**(4)** *<u>That the provisional relief will not disserve the public interest</u>*

24. Finally, the requested relief will not disserve the public interest. To the contrary, granting the relief serves the public interest because it sets to facilitate a cross-border bankruptcy proceeding that will provide a benefit to all rightful creditors of the Debtor.

25. For the above stated reasons and to the best of my knowledge, I respectfully submit that the relief sought is necessary and appropriate, in the interest of the public and international comity, and will not cause any hardship to any party in interest that is not outweighed by the

benefits of granting the requested relief. In the event that the Court finds that the Swiss Proceedings are a foreign nonmain proceeding, the relief requested is still appropriate because the relief may be—and should be—granted in the discretion of the Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted this 24th day of October, 2025.

By: */s/ Christopher Jarke*
Christopher Jarke, Chief Financial Officer and
Chief Operating Officer of LzLabs GmbH